# IN THE UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF ARKANSAS
# LITTLE ROCK DIVISION

IN RE:    NANCY JANE NICHOLAS, Debtors                    4:11-bk-12233E
                                                          Chapter 13

## ORDER SUSTAINING TRUSTEE'S
## OBJECTION TO CONFIRMATION OF INITIAL PLAN

Now before the Court is the *Objection to Confirmation of Initial Plan* (**"Objection to Confirmation"**) filed by Mark T. McCarty, Chapter 13 Trustee (the **"Trustee"**).  This matter was called for hearing on July 26, 2011; Kimberley Woodyard appeared on behalf of the Trustee, and Jeremy Bueker appeared on behalf of the Debtor.[1]  The parties' counsel informed the Court they wished to submit the case on stipulations and briefs.  Stipulations of facts and exhibits were submitted to the Court on August 16, 2011 (these were not filed on ECF).  Initial briefs were filed on August 16, 2011, and responsive briefs were filed on August 30, 2011.  The Court took this matter under advisement at that time.  This order, which constitutes the Court's findings of fact and conclusions of law, was delivered orally on October 25, 2011.

The Court has reviewed the parties' briefs, stipulations and exhibits as well as the applicable law.  There are no material factual disputes.  The applicable law regarding the disposable income test is also largely not in dispute.  The Debtor acknowledges that under *Hamilton v. Lanning*, 560 U.S. ___, 130 S.Ct. 2464 (2010), the Court may take into account

---

[1] Ron Hunt of the law firm, Nibock & Bueker, filed the briefs on Debtor's behalf and attended the oral ruling.

the Debtor's current wage income (which is much higher than the current monthly income or "CMI" reflected on Form B22) to determine her projected disposable income. The parties acknowledge and agree that the Debtor is a below-median-income debtor, and as such, her expenses are to be determined in accordance with Schedule J (as opposed to Form B22 and the standard expenses allowed above-median-income debtors), and are subject to review by the Court to determine if such expenses are reasonable and necessary.

The Court is specifically asked in this case to determine the reasonableness of the Debtor's home mortgage expenses. The Debtor lives alone in a 7,000 square foot home on 10 acres of land in Conway, Arkansas. She pays $1,850.21 on a first mortgage securing the home; $869 on a second mortgage securing the home; and $83.33 to cure an arrearage on the second mortgage. The house payments total $2,802.54. Pursuant to a divorce decree entered in Faulkner County in November 2006, the Debtor was awarded sole possession of the house and sole responsibility for making the payments on the house until it is sold. At that point, the proceeds were to be split between the Debtor and her former spouse. It is conceded the Debtor has no equity in the home at this time. Further, the parties stipulate that she owes $215,732 in unsecured debts, and that her five-year plan proposes to pay a total of $3,158.39 or 1.501% on her unsecured debts.

The very simple issue before the Court is whether a 7,000 square foot home with monthly payments over $2,800 is necessary and reasonable for a single debtor with no dependents. The Court easily finds it is not. The Debtor's unsecured creditors should not be forced to pay for a home that is well in excess of what the Debtor needs. However, in

2

defense of keeping this home, the Debtor makes two arguments: (1) that she is bound under the divorce decree to keep making payments on the home until it sells, and (2) that she is not required to fund her plan or pay for her basic living expenses with her social security income. Although not specifically articulated as such, the Debtor is essentially arguing that she can use her social security income of $1,739 per month to pay all but $1,063.54 of her mortgage payments, but that if she is forced to find new housing and pay possibly higher utilities,[2] she may end up paying as much or more than that for housing in any case, leaving no additional disposable income for her unsecured creditors.

The Court will first address the easier question regarding the divorce decree. Debtor contends that it would violate her divorce decree to realize a loss on the sale of the home, and that her ex-spouse could sue her for contempt if she surrenders the house and there is a deficiency asserted against her and her ex-husband. The Trustee counters that there is no hold harmless provision in the decree, and that even if there were, it is well-settled that a debtor is not required to maintain payments to protect a co-debtor.[3] The Court agrees that

---

[2] The Court finds the assertion that Debtor may have higher utilities doubtful – even an efficient 7,000 square foot home is bound to have higher utilities than a more modestly sized home or apartment.

[3] The Trustee cites *In re Knox*, 2007 WL 1541957 (Bankr. E.D. Tenn. May 23, 2007) which holds that an obligation of one spouse to pay debt under a marital dissolution agreement that is not characterized or intended to be support does not constitute a "domestic support obligation" that must be paid in full under a Chapter 13 plan. Additionally, the Court notes that even if there is a hold-harmless provision in the divorce decree, there is no debt owed by the Debtor to her former spouse unless he in fact pays the debt at issue. *See also Beggs v. Niewdach and Beggs v. Tripcony Law Firm, P.A. (In re Beggs)*, 314 B.R. 401 (Bankr. E.D. Ark. 2004) ("A property settlement incorporated by a divorce decree that apportions third party debt to one spouse means that the obligor-spouse indemnifies the obligee-spouse in the event that the obligee is required to pay.")

3

the Debtor cannot continue to make payments on this home solely to protect her ex-spouse from a deficiency judgment. The Court is aware of no law mandating such a result, and the Debtor has not cited any. The divorce decree requires the Debtor to maintain payments on the home until she can sell it; it does not require the Debtor to sell the home at a profit. Although there is some arrearage on the home mortgage, the Debtor maintains that she has continued to make payments and she states she has gone to a great deal of effort to sell the home. It has been almost six years since the divorce decree was entered which contemplated that there would be a sale of the home, and that such a sale would generate proceeds that could be split between the Debtor and her ex-husband. Circumstances (and specifically the real estate market) have significantly changed in these six years, and now the Debtor cannot sell the home, and at its current value, there is no equity to share with her ex-husband. The exact terms of the divorce decree cannot be carried out, and the Debtor may seek relief from the terms of the divorce decree in State Court if she wants to mitigate against a contempt action. That is not this Court's concern. The Debtor's unsecured creditors cannot be forced to subsidize the Debtor's desire to (a) protect her ex-husband as a co-debtor, and (b) seek to obtain equity in a home she cannot sell for what she thinks it is worth. "Proper value" as Debtor's counsel puts it, **IS** fair market value, not what the Debtor believes her house should be worth. The Court agrees with the Trustee that the home is an unnecessary and an unreasonable expense that should be surrendered to afford a larger dividend to unsecured

---

(citing *In re Sturdivant*, 289 B.R. 392, 399 (Bankr. W.D. Ark. 2003) and *Johnston v. Henson (In re Henson)*, 197 B.R. 299, 303 (Bankr. E.D. Ark. 1996)).

4

creditors.

However, the more difficult question presented in this case is to what extent the Debtor's social security income should be taken into account in determining the Debtor's projected disposable income. Many courts have struggled with this question with most concluding that because social security income is specifically excluded from CMI and the definition of "disposable income," it is not to be included in the calculation of projected disposable income. *See In re Baud*, 634 F.3d 327 (6th Cir. 2011), petition for cert. filed, 80 USLW 3055 (U.S. July 1, 2011) (No. 10A1008), and cases cited therein. Judge Dennis Dow has noted, "[w]hether Social Security income, although not part of disposable income, is nonetheless part of projected disposable income is an open question upon which the courts differ." *In re Arlen*, No. 10-21980 and No. 10-22371, 2011 WL 1667473 (Bankr. W.D. Mo. May 3, 2011). The Court is aware that the Eighth Circuit Court of Appeals has determined that due to a conflict between the Social Security Act and the Bankruptcy Code, the Social Security Act "acts as a complete bar to the forced inclusion of past and future social security proceeds in [a chapter 7] bankruptcy estate." *See In re Carpenter,* 614 F.3d 930, 936 (2010). Further, the Bankruptcy Appellate Panel for the Eighth Circuit concluded in *In re Thompson,* 439 B.R. 140 (2010), that the debtors' failure to contribute social security income to their plan was not in and of itself sufficient to find that the debtor filed bankruptcy in bad faith. However, the BAP in that case specifically noted, "[t]his Court does not need to decide whether Social Security income could *ever* be included in a debtor's projected disposable income." 439 B.R. at 143, n. 3 (emphasis added).

5

In *In re Cranmer,* the Bankruptcy Court in Utah held that by filing Chapter 13, a debtor voluntarily submits all of his or her income to the plan, and consequently, it is subject to the projected disposable income test. *In re Cranmer*, 433 B.R. 391 (Bankr. D. Utah 2010). The *Cranmer* court noted, "[t]he inclusion of SSI in PDI is consistent with pre-BAPCPA procedures. It is appropriate to continue calculating PDI in the same manner because PDI was not amended by BAPCPA despite Congress' opportunity to do so. Congress does not write on a clean slate when amending the bankruptcy code and without indication that a change should occur, past bankruptcy practices should continue unless specifically and statutorily changed." *Id.* at 399 (citing *Hamilton v. Lanning*, 130 S.Ct. at 2473-74, and *Dewsnup v. Timm,* 502 U.S. 410, 419, 112 S.Ct. 773 (1992)).

The Court agrees with Judge Thurman's analysis in *Cranmer* with respect to the inclusion of social security income in a debtor's projected disposable income. In particular, the Court agrees with Judge Thurman's unwillingness "'to accept the proposition that Congress intended to give debtors the discretion to dictate the amount of future disposable income they want to contribute to a plan' particularly when the intent of BAPCPA is to ensure debtors repay creditors the maximum they can afford." *In re Cranmer*, 433 B.R. at 397 (quoting *In re Timothy*, No. 08-28332, 2009 WL 1349741 (Bankr. Utah May 12, 2009)).

Chapter 13 is always voluntary,[4] and accordingly, a Chapter 13 debtor's SSI is

---

[4] *See In re Cranmer*, 433 B.R. at 400 (rejecting debtor's argument that chapter 13 is no longer voluntary post-BAPCPA). *See generally In re Lester*, 409 B.R. 364, 372 (Bankr. W.D. Va. 2009) ("Chapter 13 has been designed by Congress to be voluntary on the part of debtors, who may not be compelled to remain in it over their objection.").

voluntarily committed to fund the Chapter 13 plan. Thus, the Debtor's SSI is included in the projected disposable income test. The Court finds the Debtor's projected disposable income includes her social security income, and that her housing expense is unreasonable and unnecessary.

For the reasons stated herein, it is hereby

**ORDERED** that the Trustee's Objection to Confirmation is **SUSTAINED**. The Debtor has 30 days in which to propose a modified plan.

**IT IS SO ORDERED.**

*Audrey R Evans*
Audrey R. Evans
United States Bankruptcy Judge
Dated: 10/26/2011

cc: Debtor
Debtor's attorney
Chapter 13 Trustee
U.S. Trustee